**Sheryl Z. WHITE, Plaintiff-Appellant,**

v.

**CITY OF SAN DIEGO, A.A. "Bud" Bigge, Ruben Dominguez, William G. Sage, R. W. King and Fred M. Conger, Defendants-Appellees.**

No. 77-1195.

United States Court of Appeals, Ninth Circuit.

Sept. 24, 1979.

Sheridan Reed, Eckhardt, Reed & Reed, San Diego, Cal., argued, for plaintiff-appellant.

John W. Witt, City Atty., San Diego, Cal., on brief, for defendants-appellees; Ted Bromfield, Deputy City Atty., San Diego, Cal., argued.

Before TRASK and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

White appeals a district court ruling that the City of San Diego (the City) and certain named defendants did not discriminate against her on the basis of sex in her attempts at promotion to higher level accounting positions with the City. We affirm.

I

Although several factual issues are disputed, the basic sequence of events is clear. City accounting positions, ranked from highest to lowest, are principal accountant (a managerial position), senior accountant, accountant, and junior accountant. Promotion to accountant is automatic after passage of an examination; promotion to senior or principal accountant requires not only passage of an examination but an oral interview as well.

To fill a vacancy, the appointing authority submits a "requisition" to hire or promote an employee to a specific position. The City's hiring rules require that three potential employees have passed the required examination before the City may select one to fill the position. On occasion, this requires the City to provide an extra administration of the required examination if three "eligibles" are not currently certified for hiring or for promotion to the particular position.

From 1967 to 1974, the City maintained a "Career Advancement" program pursuant to which the City could "fill" certain budgeted positions with personnel from lower levels. Pursuant to this program, the City could fill positions budgeted as accountant or senior accountant positions—but not those budgeted as principal accountant positions—by hiring persons at the junior accountant level. Thus, with the one exception, a person could be hired in a lower position than that budgeted. Those so hired could then be advanced to the budgeted position as they gained the requisite qualifications. This allowed the City great flexibility in its development of career personnel.

The City hired White as a junior accountant pursuant to the Career Advancement program in 1969. In 1970 she was promoted to accountant. She became eligible for the position of senior accountant in November 1972. In May 1974, White passed the examination for principal accountant; in November of that year she was promoted to senior accountant.[1] Between her 1972 eligibility and 1974 promotion, the City hired a number of junior accountants and in September 1973 made two promotions to senior accountant. In the first instance, a male, a female and White were certified and, after interviews, the male was selected. A second requisition was then issued and the other female was promoted.

White filed a charge of employment discrimination with the Equal Employment Opportunity Commission and, after receiving the appropriate right .to sue letter, brought this action in 1974, claiming defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. She sought back pay and other relief.[2] The district court ruled in part that she had not made out a prima

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

1. At oral argument White's counsel told us that White's position was subsequently eliminated and that she continues to work for the City as an analyst.

2. In view of our disposition, we do not reach White's argument that the district court improperly dismissed her claims for compensatory and punitive damages from certain counts of her complaint.

facie case of sex discrimination. On appeal she challenges that ruling, claiming that pursuant to either *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), she established the requisite prima facie case.

## II

White first claims that she established a prima facie case of sex discrimination by satisfying the four elements set forth in *McDonnell Douglas.* There the Court held that a Title VII plaintiff may establish a prima facie case of discrimination by showing:

> "(i) that he belongs to a . . . minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

White argues that a position remained "open" because the City had budgeted, but did not fill, senior accountant positions.[3] It is not clear that the district court ruled on this argument, but regardless of whether a position was open, other essential elements of *McDonnell Douglas* remain unsatisfied.

White apparently claims that she was first rejected for a senior accountant position when she was not promoted under the first September 1973 requisition. She claims the City then continued to seek senior and junior accountants after her rejection, satisfying the last element of the *McDonnell Douglas* standard. Viewing the budgeted positions as "open," White appears to argue that the second September requisition for senior accountant constitut-ed the requisite search for applicants of White's qualifications. But White states that she was rejected under this requisition as well. She does not state as part of her prima facie case theory that she was not considered for the senior accountant position under the second September requisition. Thus she presents no point at which the City considered others of her credentials but did not consider her; the applicants it continued to seek included White.

We recognize, of course, that the Court has stated that the four-element *McDonnell Douglas* standard "was not intended to be an inflexible rule," *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 575, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), and that White need only show actions by the employer "from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Id.* at 576, 98 S.Ct. at 2949 (quoting *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Thus, a proper prima facie case identifies sex as the likely reason for the denial of a job opportunity. But we think the "rejection" element of the *McDonnell Douglas* test operates to identify the points at which consideration of the plaintiff ends so that if further applicants are sought from persons of plaintiff's qualifications, such an action raises an inference of discrimination. In this case White has presented no point at which the City's conduct could suggest a reason for the first "rejection," for she contends neither that she was barred from consideration for promotion following that initial "rejection," nor that she was not considered when others of her qualifications were. Simply put, considering the facts on which White relies to make out a prima facie showing of sex discrimination, we cannot say that as a matter of law she was ever "rejected" as a

---

3. White also claims that a requisition for a senior accountant issued in June 1972 but that no one was promoted to that position until September 1973. She contends that this senior accountant position was thus "open." The dis-trict court found that the requisition was issued by mistake. Because White does not appear to argue that she was first rejected until the September 1973 promotion, we need not consider any earlier effects of this requisition.

senior accountant for purposes of *McDonnell Douglas.*[4]

▮ Nor can the subsequent hiring of junior accountants satisfy *McDonnell Douglas.* It is undisputed that the qualifications for a junior accountant position, by definition, differ from those required for a senior accountant position. For this reason, such hirings cannot demonstrate that White was no longer under consideration for the position of *senior* accountant. Further, even if we were to assume they followed White's "rejection," these hirings do not meet the further *McDonnell Douglas* requirement that the City continue to seek applicants from "persons of complainant's qualifications," and thus provide no clue to the basis of that "rejection." Thus, however we view the City's subsequent junior accountant hirings, they cannot, on these facts, raise an inference of discrimination on the basis of sex.

### III

We next examine White's claims based on her statistical data. White offered data showing the rates at which the City hired or promoted men and women at the junior, senior, and principal accountant levels. Relying on *Griggs v. Duke Power Co., supra,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, she argues that her statistical proof made out a prima facie showing that the oral interviews required for promotion to senior and principal accountant had a discriminatory impact on women. *See Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). She argues that her statistics show hiring disparities at the junior accountant level and that this proof, coupled with a consistent pattern at higher levels, constitutes a prima facie showing that certain aspects of the Career Advancement program had a disparate impact on women. White also claims that her statistical showing is relevant under a modified *McDonnell Douglas* prima facie showing, relying on *Pettit v. United States,* 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973). She argues that she may establish a prima facie case of disparate treatment under *McDonnell Douglas* by showing:

> "(i) that plaintiff belongs to a . . . minority, (ii) that he was qualified for promotion and might have reasonably expected selection for promotion under the defendant's on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority."

*Id.* White claims she showed discrimination in the junior accountant hiring; that certain aspects of the hiring process were highly discretionary; and that the persons responsible for discrimination in hiring at the junior accountant level were the same as those interviewing for the higher level positions. We need not decide whether we would accept the *Pettit* requirements, however, for the district court's findings of fact defeat her claims.

We first determine the appropriate standard of review. White argues that we may make a determination of her allegations of discrimination independent of the clearly erroneous standard, stating that her "principal claim is that the trial court did not properly apply the law to the undisputed facts in evidence." But White claims that,

---

4. We recognize that in *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court appeared to indicate that a prima facie case had been made out by a plaintiff who had applied for a job and was ultimately offered it "long after" the application. *Id.* at 569, 98 S.Ct. 2943. Thus, it could be argued that he established a prima facie case even though he was apparently still later considered. *Id.* at 576, 98 S.Ct. 2943. But in the case before us, White *continued* to be considered when others of similar qualifications were considered; *Furnco* is silent on this point. Without further factual information in *Furnco,* we cannot tell whether, between the application and ultimate hiring, Furnco continued to consider that plaintiff, and we hesitate to construe the situation in *Furnco* as dispositive of White's case.

in view of her statistical proof, the district court should have determined that she had made out a prima facie case of discrimination. Here the district court found that White's statistics were in general unreliable and that the senior and principal accountant samples sizes were too small.[5] We have said that the use of statistics "is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn." *United States v. Ironworkers Local 86,* 443 F.2d 544, 551 (9th Cir. 1971), *cert. denied,* 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). The Supreme Court, too, has recognized that the usefulness of statistics "depends on all of the surrounding facts and circumstances." *Teamsters v. United States, supra,* 431 U.S. at 340, 97 S.Ct. at 1857. *See Hazelwood School Dist. v. United States,* 433 U.S. 299, 312, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). Those of White's claims that concern the strength of her statistical proof require us to decide in the first instance whether the district court's factual assessment of the data was clearly erroneous. We conclude that it was not.

■ We first examine the junior accountant data. Between 1967 and 1974, according to her figures, 5, or 11.6 percent, of those hired as junior accountants were women, although women made up 25 percent of the available applicants. Thirty-eight, or 88.4 percent, of those hired were men, although men made up 75 percent of the available applicants. This set of statistics, she claims, demonstrated a statistically significant relationship between sex and job selection. The City's expert witness, Snapper, testified at trial that a .05 level of statistical significance indicates that the demonstrated relationship between the variables would occur in a random sample five times out of one hundred and is generally recognized as the point at which statisticians draw conclusions from statistical data. White maintains that the relationship between applicants available and applicants hired as junior accountants was statistically significant at less than the .01 level, thus well beyond the minimum .05 level of statistical significance. But Snapper also testified that the "available" group was "very nebulous," and that he would not consider it meaningful. He testified that he thought it was impossible to determine why some individuals were deemed "not available," and, as we read his testimony, indicated that some classified as "not available" had actually been hired. Testimony in the record does indicate that the relationship between sex and employment demonstrated by a comparison of those certified for hiring as junior accountants, rather than those "available," and those selected for junior accountant was significant at less than the .05 level. But White's own counsel elicited testimony from Snapper to the effect that the certified pool did not represent those ultimately interviewed for the junior accountant position and from expert witness Plag testimony that, given this circumstance, he would hypothetically use an "available" applicant pool. Thus, testimony

5. The district judge stated in his findings of fact:

"The court finds that based on the statistical data presented, the data was not of sufficient moment to be considered reliable by the experts. Expert testimony established that no valid conclusions could be predicated upon the data and the court so finds.

. . . Thus considering the statistics produced by both sides, the court finds that the data does not support or establish an inference of discrimination based on sex."

In oral findings made from the bench and incorporated into the written findings of fact and conclusions of law, the district judge stated in part:

"Essentially, all [but the junior accountant statistics] . . ., I would think, would be of such a small sampling that any realistic conclusion to be based on that, I think, would be inappropriate. I have in mind a recent case of the Ninth Circuit, *Morita v. Southern Cal. Permanente Medical Group,* [541 F.2d 217] . . . which had an excellent discussion dealing with statistical proof.

Basically, by the only expert presented to me, the data that was prepared by both of the parties in this case was not of sufficient moment to be considered reliable by experts and that I could predicate any valid conclusions based upon the data that we had.

So, in summary, think that the plaintiff has the burden here. That was not met."

in the record casts doubt upon the usefulness of both the certified and available applicant data pools. The district judge did not err in rejecting White's junior accountant statistics as unreliable.

■ Finally, we examine the senior and principal accountant statistics. This set showed that of the 15 persons hired between 1967 and 1974, one, or 6.7 percent, was a woman, while 93.3 percent were men, though women and men made up 17.9 percent and 82.1 percent, respectively, of the available applicants. The principal accountant set showed that for the same period, nine, or 100 percent, were men, though of the available applicants, one, or 4.5 percent, was a woman, while men made up 95.5 percent of the available applicants. The district court, citing *Morita v. Southern Cal. Permanente Medical Group*, 541 F.2d 217 (9th Cir. 1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765 (1977), thought the sample size of this group of figures too small to be meaningful. In *Morita* we said that " 'statistical evidence derived from an extremely small universe, as in the present case, has little predictive value and must be disregarded.' " *Id.* at 220 (quoting *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409, 412 (8th Cir. 1975)). Here the City selected one of five women for the position of senior accountant and rejected the only woman available for hire as a principal accountant; the total promoted to senior accountant was 15 out of 28 and the total promoted to principal accountant was nine out of 22. White does not challenge, by reference to expert testimony or other portions of the record, the district court's judgment that the sample size was simply too small. The Supreme Court, too, has recognized that "[c]onsiderations such as small sample size may . . . detract from the value of [statistical] evidence," *Teamsters v. United States, supra,* 431 U.S. at 339 n. 20, 97 S.Ct. at 1857 (1977) and this appears to have been a case in which such considerations were

appropriate. *Cf. Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974) (where plaintiff claimed discrimination on basis of race in selection of 13-member panel, "the District Court's concern for the smallness of the sample presented by the 13-member Panel was . . . well founded"). Thus, like the junior accountant statistics, the senior and principal accountant statistics do not require us to hold that the district judge erred in rejecting the statistical data.[6]

## IV

■ White claims that she was improperly denied discovery of information on the administration, grading, and design of the written examinations for all four accountant positions for a five-year period, and of the personnel file of one person promoted to principal accountant. In addition, she claims that the district court should not have issued a protective order relieving the City of answering her third set of interrogatories.

We have said that the district judge "has wide latitude in controlling discovery, and its rulings will not be overturned in absence of a clear abuse of discretion." *Canadian Am. Oil Co. v. Union Oil Co.*, 577 F.2d 468, 473 (9th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 258 (1978). We see no abuse of discretion here. The City submitted an affidavit stating why the requested examination information was privileged; White does not challenge the claim of privilege in any way. Further, she has not told us why she wanted the individual personnel file, and has characterized information sought in the third set of interrogatories only as "vital." Without more, there is no basis for disturbing these rulings, and we conclude that they did not constitute an abuse of discretion.

AFFIRMED.

---

**6.** We do not reach White's claim that it was error for the district judge to admit the City's statistical data, compiled for time spans different from that White used. Further, because the testimony we have cited supports the district judge's finding, we need not comment, pursuant to White's *Griggs* claim, on whatever problems of relevance are raised by the fact that White was hired as a junior accountant.