**Margaret Christine REED, Individually, Plaintiff-Appellant,**

v.

**LOCKHEED AIRCRAFT CORPORATION, Defendant-Appellee.**

**No. 77–4035.**

United States Court of Appeals, Ninth Circuit.

Jan. 16, 1980.

Rehearing Denied March 7, 1980.

Marilyn V. Freytag, Goldman, Stone & Freytag, Pasadena, Cal., for plaintiff-appellant.

Scott H. Dunham, O'Melveny & Meyers, Los Angeles, Cal. (argued), for defendant-appellee; Richard C. White, Los Angeles, Cal., on brief.

Before WRIGHT, HUG and FLETCHER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We review the grant of defendant's motion for summary judgment in this employment discrimination case. The trial court concluded there was no issue of fact which, if resolved in plaintiff's favor, could lead to a plaintiff's verdict. We disagree and reverse and remand.

## FACTS

Margaret Reed was an employee of Lockheed for almost 35 years from 1943 until her retirement in 1978. Her advancement was slow. She began as a clerk in the Stock Transfer Department in 1948, attained a supervisory position of Assistant Transfer Officer in 1953, and was "promoted" to Transfer Officer in 1963.

The word "promoted" is used advisedly, because Reed alleges she was given no raise to accompany the change in title. Although counsel for appellee refer to the 1963 event as a "promotion," Howard Lockwood, appellee's personnel director, testified in his declaration that Reed received a "change in title only, without a corresponding change in duties and salary grade." This means that she continued at the same job with the same duties from 1953 until she retired in 1978. Whether a male supervisor would have held the same position for 25 years is unclear.[1]

In addition to her failure-to-promote allegation, Reed alleged that men with the same or less responsibility earned higher salaries than she did.[2] Specifically, she alleged that Lockheed discriminated against her by bringing a man from the East Coast to become Director of Investment Relations. The position carried no greater responsibility than hers, yet the salary was twice as much. Ms. Reed's claim is twofold: she, not the new man, should have been given the position or, in the alternative, her salary should be commensurate with his.

She also alleged that Lockheed discriminated against her and all women employees by closing special training programs to women. In evidence are Lockheed brochures which describe the programs as available to "men under 35 . . ." or in other masculine terms.[3]

Based on Ms. Reed's deposition, the court found that she had not been rejected either for a training program or a promotion. Reed contends that at Lockheed one did not usually apply for promotions or training programs. The company ordinarily approached employees with offers to participate in a program or to be promoted. She further contends it was futile for women to seek advancement.[4] Whether or not the company discriminated against her, then,

---

1. In Reed's Declaration, appended to her Opposition to the Motion for Summary Judgment, she stated:

   I have reviewed [Lockheed's 1976 payroll records] and . . . I learned that there is not one man holding his present position longer than I. In fact, of the seventy-five job titles listed only two have been held by the same man more than ten years!

   Declaration, p. 19. Appellee has not responded to this allegation.

2. In her Declaration Reed presented statistics which, though not entirely clear, seem to indicate that between 1968 and 1976 fewer than 10% of the men holding positions comparable to Reed's position made less than she did.

3. There is no question that the company's explanatory memoranda were sexist. In 1968 a company circular declared:

   For several years, we have had a continuing program called "Younger Employees of the Year." Its purpose has been to identify and offer development possibilities to men who generally have demonstrated superior performance.

   The company's name for the advancement program was "The Plan for Every Man." (Plaintiff's Exhibit "D")

4. In her deposition Reed related several incidents which indicate that women at Lockheed knew they would not receive deserved promotions. She tells of one woman with substantial responsibilities in the public relations department who had recently earned a college degree:

   I asked her if she got a promotion because of this, and she said, "You are not serious." I said, "Yes, I am serious." And she said, "No, of course not."

   The actual existence of a pervasive discriminatory policy, and the extent to which it engendered a legitimate sense of futility, are matters for trial, and we venture no opinion as to the strength of Reed's contention.

turns in part on the factual issue of how one is promoted at Lockheed, and whether women have a justifiable belief that promotion is not available to them.

The final factual issue concerns Reed's August, 1975 request for a salary increase. Lockheed contends, and the trial court found, that she was indeed given a pay increase, and she has nothing about which to complain.[5] Reed alleges that the increase was a "token," and that the company discriminated by not advancing her salary as they would that of a man. She also contends that the salary differential between her and her lowest-level subordinate is much smaller than between any male supervisor and his lowest-paid subordinate.[6]

Reed filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 24, 1976. Title VII provides a statute of limitations. A charge of discrimination must be filed within 180 days of the alleged discrimination or within 300 days if there is a state compliance agency. (Title VII, 42 U.S.C. § 2000e–5(e)).[7] The trial court found that Reed's discrimination claims were time-barred and, alternatively, that the claims had no merit even if not time-barred. It granted Lockheed's motion for summary judgment.

## STANDARD OF REVIEW

In our review we must view the evidence in the light most favorable to Reed, to determine if there was a genuine issue as to any material fact. We are mindful that the trial court's function was similarly limited:

> In ruling on a motion for summary judgment, it is not the function of the court to resolve existing factual issues through a "trial by affidavits." [Citation] The court is to determine whether a genuine

issue of material fact exists, viewing all evidence and factual inferences "in the light most favorable to the party opposing the motion."

*Ramirez v. National Distillers and Chemical Corp.*, 586 F.2d 1315, 1318 (9th Cir. 1978).

Courts are reluctant to dismiss by summary judgment Title VII discrimination suits where, as in antitrust actions, motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers. *See Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 683 (9th Cir.), *cert. denied* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976).

## DISCUSSION

### 1. The Statute of Limitations

■ The district court ruled that, because Reed did not file a charge of discrimination within the appropriate time period, her claim is time-barred. In so concluding, the court determined that Reed's complaint alleged only three instances of discrimination, in 1963, 1969 and 1972. If true, then Reed's claim would indeed be time-barred.

The complaint should not be read so narrowly. Her allegations included a sweeping attack on Lockheed's systems of promotion, compensation and training. She alleged that the violations took place throughout her service at Lockheed and until the day she filed her complaint.

Reed alleges, for example, that under Lockheed's promotion practice the company approached worthy candidates to ask them if they wished promotion. The employee need not seek it. If true, (and there is at least a genuine issue of fact as to the truth of this claim) and if it is also true that Reed was not promoted for 25 years, then each

---

5. The parties agree that Reed was granted a raise upon her request. She alleged that it was not commensurate with her position. Appellee argues that she raises this issue for the first time on appeal. In light of our disposition, we need not decide the question.

6. In her Declaration Reed stated that her lowest-paid subordinate earned $162 per week less than Reed, and that "There is no male manag-

ing a department at Defendant Corporation with such a slight differential in salary between him and the pay of his least experienced hourly employee." Appellee has not responded to this allegation. Whether it is true and if so whether it constitutes a violation of Title VII are triable issues of fact.

7. California is such a state, and the applicable limitations period is 300 days.

day without promotion constituted a new violation of Title VII, assuming that similarly situated males were promoted with more regularity.

The fact that Reed sought to establish her case by listing specific incidents antedating the limitations periods is irrelevant. The 1963, 1969 and 1972 events are not the basis of her charge of discrimination. They are but evidence that a *policy* of discrimination pervaded Lockheed's personnel decisions. The violations of which she complains occurred each day of her employment, including the days within the appropriate limitations period.

Appellee asserts that this kind of allegation comes under the doctrine of "continuing violations," a doctrine which, it asserts, the Supreme Court rejected in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Appellee errs on two counts: First, this case is distinguishable from *Evans* and is not controlled by it.[8] Second, the continuing violation doctrine, properly understood, has been approved by many post-*Evans* courts.

In *Evans*, an employee of United Air Lines was dismissed when she married, under a company policy later declared to be in violation of Title VII. After reinstatement, the employee sought consideration for seniority purposes of the years she was away from her job. She contended that a denial of seniority benefits for the period during which the company illegally kept her from working was a continued violation of her rights.

The Supreme Court disagreed, holding that, if United's present policy did not discriminate, Evans could not seek relief for past violations (then time-barred) which had a present adverse impact. The Court stated:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.

It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue,

. . .

431 U.S. at p. 558, 97 S.Ct. at p. 1889.

The Court did not, as appellee contends, reject the doctrine of continuing violations. It merely defined the nature of continuing violations:

> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.

*Id.* (Emphasis in original.)

For the purposes of this action, then, the critical question is whether Lockheed, within 300 days of Reed's filing her charge, engaged in the unlawful conduct of failing to promote women in situations where men would be promoted. The *Evans* decision held merely that continuing *impact* from past violations is not actionable. Continuing violations are.

The distinction between continuing *violations* and continuing *impact* from past violation has been recognized by post-*Evans* courts. In *Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977) the court quoted language appropriate here:

> "Plaintiffs here challenge the entire promotion system maintaining that it continually operated so as to hold them in lower echelons. Hence, the 90 day period [now 180 days] period [sic] prior to the filing of the EEOC charges looms inconsequential in this kind of case."

*Id.* at 1222, quoting *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975).

We agree with the *Clark* court's conclusion:

> The allegations of the complaint and testimony in the deposition show that continuing discrimination is under attack.

---

8. See "The Supreme Court, 1976 Term" 91 Harv.L.R. 70 (1977) at pp. 261–265.

The appellant's action is therefore not time-barred.

*Id.* at 1223.[9]

Judge Larson's analysis of the effect of *Evans* on the continuing violation doctrine, in *Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580 (D.Minn.1978) is helpful. He noted that some courts have theorized that:

> [A] challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future.

79 F.R.D. at 586.

This approach is relevant to Reed's complaint. The decision that her Title VII claim is time-barred must be reversed.

### 2. *Violations of Title VII*

The district court held also that, even if Reed's claims are not time-barred, they do not state a claim under Title VII. The court ruled:

> Plaintiff has not been discriminated against by defendant because of her sex in violation of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e *et seq.* Specifically, she has not been unlawfully discriminated against because of her sex with respect to educational or training benefits, transfers, promotions or salary increases in 1963, 1969, 1972.

The ruling was inappropriate on a motion for summary judgment for two reasons. First, the court passed over Reed's allegations that Lockheed was engaged in a continuing violation by its policy of preferring men over women in seeking candidates for promotion and for participation in training programs and in awarding salary increases, all of which continued through the day the complaint was filed. Second, the court chose to resolve disputed factual issues, rather than to determine whether any existed.

Reed's allegations raised several material issues of fact. She claimed that no male supervisor would occupy the same position for 25 years without promotion. She alleged that women at Lockheed were not promoted at the same rate as were men, that they were not paid commensurate with men for equivalent work and responsibility and that Lockheed's policy of recruiting employees for training programs has benefitted more men than women.

Lockheed responded that plaintiff never was personally denied admission to a training program or denied promotion or raises. That begs the question for, if Reed is correct in her assertion that one did not apply for training or for promotion but instead had to be sought out and that women found it futile in any event, it is immaterial that she was not rejected. Reed has at least raised a triable issue of fact as to what may be Lockheed's system for choosing candidates for promotion and training programs and how that affects women.

To establish a *prima facie* case of discrimination, Reed "need only show actions by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act'." *White v. City of San Diego*, 605 F.2d 455, 458 (9th Cir. 1979), quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). We stated in *White* that:

> a proper prima facie case identifies sex as the likely reason for the denial of a job opportunity.

605 F.2d at 458.

Unlike the plaintiff in *White*, Reed has alleged that other employees of her ability and experience were considered while she was not. Her alleged situation at Lockheed was apparently much more unfavorable than was the plaintiff's position in *White* for, under the Lockheed system, she had no notice of an opening. Further, her respons-

9. Appellee contends that the *Clark* court "did not wait for the guidance of the Supreme Court in Evans," implying that *Clark* may be deemed overruled by *Evans*. Footnote 7 of the *Clark* decision makes clear that the judges had opportunity to modify their opinion after reading *Evans*.

es on deposition indicated that women at Lockheed had the legitimate belief that because of a pervasive discriminatory policy, an application would be futile. As Justice Stewart stated in his opinion for the Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365, 366, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977):

> A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection. . . .
>
> When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

Under these circumstances, it is no defense for Lockheed to argue that Reed was never actually rejected. Her sex may be the likely reason for Reed's failure to advance at Lockheed. Viewing the evidence in the light most favorable to Reed, we conclude that it was error to say that under no circumstances could she prove that her sex played a primary role in her job stagnation.

Reed might also establish a *prima facie* case of sex discrimination at Lockheed through statistical data indicating a disparity between the overall percentage of female employees at Lockheed and the percentage of females in better paid managerial positions. *Davis v. Califano*, —— U.S. App.D.C. ——, 613 F.2d 957 (D.C.Cir. 1979). While such data are not in the record, Reed has at least raised a triable issue of fact as to whether she could present them after full discovery.[10]

If Reed can produce such data, the court should focus on Lockheed's systems of promotion, admission to training programs and compensation, not just on isolated incidents. The findings below that Lockheed did not discriminate against Reed in 1963, 1969 and 1972, even if correct, are almost irrelevant in light of Reed's attack on Lockheed's policies. As in *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 193 U.S.App.D.C. 326, 339, 340, 595 F.2d 711, 724–725 (D.C.Cir.1978), "it is the ongoing program of discrimination, rather than any of its particular manifestations, that is the subject of attack."

Because we conclude that there are triable issues of fact as to whether Lockheed maintained a continuous policy of favoring males in selecting employees for promotions and for training programs, we reverse the judgment and remand to the trial court for proceedings consistent with this opinion. Reed will carry the burden of proving her allegations.

*REVERSED AND REMANDED.*

---

**10.** Exhibits appended to Reed's Declaration suggest the kinds of data she will need to establish a *prima facie* case. We express no opinion whether, standing alone, they do so.