Willie N. MAYFIELD, et al., Plaintiffs,

v.

Edwin MEESE, United States Attorney General, Defendants.

Civ. A. No. 86–435.

United States District Court, District of Columbia.

March 19, 1987.

Langley R. Shook and Darren Sharpe, Washington, D.C., for plaintiffs.

Richard E. Greenberg and Andrea Newmark, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

The court has before it, *inter alia*, defendant's motion to dismiss, or in the alternative to strike the class allegations. Because the questions raised by the motion to dismiss are logically addressed prior to a determination of the class issues, we address only those parts of defendant's motion attacking the claims of the named plaintiffs. Defendant's alternative motion to strike the class allegations will be addressed at a later date in conjunction with plaintiffs' motion for class certification. Because we conclude, for the reasons set forth below, that plaintiff William Mayfield has exhausted his administrative remedies and stated a proper claim under Title VII, we deny defendant's motion as to Mayfield. The defendant's motion to dismiss the complaint as to plaintiffs Thelma Moore and Ethel Sykes will, however, be granted because these plaintiffs have not exhausted their administrative remedies.

### Background

This case is a Title VII class action brought by three non-attorney employees against the Tax Division of the Justice Department. Plaintiffs are alleging that

the Justice Department engages in policies or practices that discriminate against blacks in promotions. The Justice Department has moved to dismiss on grounds of failure to exhaust administrative remedies and failure to state a claim for relief under Title VII.

According to the report of Timothy Falls, (EEO counselor, Ex. B to McBurrows Declaration), plaintiff Mayfield contacted Falls on or about September 3, 1984. An initial interview was held on September 10, 1984, with a final interview on October 11, 1984. In his interviews, Mayfield complained of race discrimination stemming from a lack of promotions, lack of training, and lack of upward mobility programs for blacks in the Tax Division. McBurrows Ex. B at "Part B". Falls wrote that Mayfield made it clear that Mayfield sought to be a class agent, sought only to exhaust legal remedies as directed by counsel, and did not seek informal resolution. McBurrows Ex. B at "Part D".

Mayfield filed a timely administrative class complaint on October 23, 1984. He alleged that black employees in the Tax Division were subject to an ongoing pattern of race discrimination, including initial assignment to lower level jobs than comparably situated whites and assignment to a disproportionate number of jobs with little or no promotion potential. He further alleged that discrimination had been "carried out through subjective evaluations by white supervisors, false accusations regarding job performance, little or no training or upward mobility programs for lower-grade employees, harassment, failure to adequately post [sic] job vacancies and discriminatory promotion decisions." McBurrows Ex. C. Mayfield alleged that the discrimination was continuing to date.

In December 1984, Falls (EEO counselor) contacted Mayfield by memo to request the specific facts of the case. After an exchange of several telephone calls, Kerry Scanlon, counsel for Mayfield, wrote to Violet Cromartie at the Department of Justice on February 11, 1985. Scanlon stated that the specific allegations were stated in the complaint, that Mayfield was not reluc-

tant to proceed expeditiously with informal adjudication, and that Mayfield had not been advised by counsel to bypass informal adjudication. McBurrows Ex. F. Scanlon also transmitted to the Department a set of proposed discovery questions. *Id.*

On May 13, 1985, the Attorney Examiner Elsa Dik Glass sent a set of preliminary rulings and interrogatories to Mayfield. McBurrows Ex. G. On May 30, 1985, Ms. Glass sent a copy of the preliminary rulings and interrogatories to Scanlon. Glass raised questions about whether Mayfield had properly brought his grievance to the attention of the EEO counselor within the charge filing period and questioned the class allegations. Scanlon submitted a lengthy response on June 21, 1985. Ex. A to Plaintiff's Opp. to Mot. to Dismiss. Attached to this response were six supporting affidavits. Apparently the Justice Department submitted responses also, to which Scanlon submitted a reply filing. *Id.*

On January 2, 1986, Glass issued a Recommended Decision urging rejection of the class complaint on several grounds. McBurrows Ex. O. First, she argued that plaintiff had not consulted the EEO Counselor in a timely manner, *i.e.*, within 90 days of an allegedly discriminatory personnel action. *Id.* at 4. She also stated that because, in her view, Mayfield had not stated a timely claim, he would not adequately represent the parties. *Id.* at 5–6. She further stated that comment on commonality and typicality was unnecessary in light of the failure to plead a timely, specific individual injury. *Id.* at 6. Finally she wrote that plaintiff had not shown numerosity of potential claimants. *Id.*

On January 16, 1986, the Department of Justice issued its final decision on the class complaint. McBurrows Ex. P. Justice rejected Mayfield's class complaint, but on different grounds than were relied on by Glass in her recommended decision. *Id.* at 1. The Justice Department rejected the class complaint solely on grounds of commonality and numerosity. *Id.* at 2–3.

Thereafter the class action complaint in this court was filed on February 18, 1986. In addition to Mayfield, Thelma Moore and

Ethel Sykes were also named plaintiffs. Neither Moore nor Sykes has initiated related administrative proceedings.

*Discussion*

Defendant's motion to dismiss, as distinguished from its motion in the alternative to strike the class allegations, raises four issues: (1) did Mayfield properly exhaust his administrative remedies; (2) did Mayfield bring a timely action; (3) has Mayfield pleaded a claim cognizable under Title VII; and (4) can Moore and Sykes be considered to have exhausted their administrative remedies through operation of the doctrine of "vicarious exhaustion". We address these issues seriatim.

### I. *Mayfield's Exhaustion of his Administrative Remedies*

It is clear that in order to bring a civil suit against the federal government for violation of Title VII, plaintiff must first exhaust his administrative remedies. Defendant does not allege that Mayfield did not follow through on the appropriate administrative steps outlined at 29 C.F.R. § 1613.601, *et seq.*, or that Mayfield missed any of the relevant administrative time deadlines. Instead, citing *Woodard v. Lehman*, 717 F.2d 909 (4th Cir.1983) and *Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980), the government argues that because Mayfield allegedly failed to make more specific his complaint at the administrative level and because he allegedly lacked interest in informal resolution of his claims, Mayfield should be deemed not to have exhausted his administrative remedies.

Defendant argues that *Woodard* is so factually close to this case that we should follow *Woodard*. In *Woodard*, the plaintiffs had brought individual claims for disparate treatment based on an alleged use of "subjective criteria" and on an alleged "denial of opportunities for training and doing certain types of work which are said to be prerequisites for advancement." *Id.* at 912. The EEO Counselor in *Woodard* requested that the plaintiffs provide written statements with specific illustrations of the alleged discrimination and specific

statements of the corrective action required. *Id.* The plaintiffs filed statements saying that the initial complaints were sufficient and that the charge was one of systemic and continuous discrimination. *Id.* The Commanding Officer then cancelled the administrative complaint. *Id.* On review of the district court's judgment for defendants after a bench trial, the Fourth Circuit held that where the administrative complaint had been cancelled because of plaintiffs' failure to provide specific details, plaintiffs failed to exhaust administrative remedies. Similarly, in *Johnson v. Bergland*, 614 F.2d at 415, the administrative complaints had also been cancelled for lack of prosecution.

This case is not on the same procedural footing as either *Woodard* or *Johnson*. Neither the complaints adjudication officer who issued the final decision on Mayfield's class complaint, nor the attorney examiner who made a recommended decision, issued findings that Mayfield had not complied adequately with the administrative process. Instead, both these people adjudicated Mayfield's class complaint on the merits of the class allegations. This is clear from the text of the decisions, as well as from the terms used to describe the agency's disposition of the complaint. In this case, the complaint was "rejected," a term of art which under the class action regulations is used to refer only to substantive decisions. By contrast, a complaint that is dismissed for want of prosecution, such as occurred in *Woodard* and *Johnson*, is "cancelled."

We believe that this distinction between a "rejected" complaint and a "cancelled" complaint limits the reach of *Woodard* and *Johnson*. Where the agency decides during the processing of the complaint that it has sufficient information to proceed with the adjudication of the complaint, the agency should be bound by that decision. The fact that the agency proceeded to a decision on the merits is a much more reliable indicator that a plaintiff's cooperation was adequate than the government's assertions during subsequent litigation. In the situation where the agency has taken the step of deciding the merits of

a claim, the agency's decision is subject to the normal statutory *de novo* review in federal court.[1]

■ The government raises one other exhaustion argument. It argues that because the agency has only adjudicated the class issues, the plaintiffs' class suit here should be limited to a challenge of the agency determination of the class issues. Memo. of P & A's at 24–25; *Hogan v. Orr,* 672 F.Supp. 1388, 1389 (W.D.Okla.1986); *Harrison v. Orr,* 672 F.Supp. 1387, 1388 (W.D.Okla.1986); *Abdul-Raheem v. Orr,* 672 F.Supp. 1389, 1390 (W.D.Okla.1986); *Wade v. Secretary of Navy,* Civ. No. CV 85–028 (S.D.Ga. Aug. 2, 1985). Whatever the correctness of the decisions in these cases, they should not apply here. In this case, the final decision on Mayfield's complaint rejected the entire complaint. Although the government had the option of rejecting only a portion of the complaint, it did not do so. The government did not indicate that it had accepted any part of Mayfield's complaint. As the covering letter transmitting the decision to Mayfield stated, the decision was a final adjudication of Mayfield's complaint, which of necessity included its merits. Thus, Mayfield was entitled, under 29 C.F.R. § 1613.641, to bring civil suit on the entire complaint within thirty days of his receipt of the agency decision.

In its rush to attempt to get this court to expand the scope of *Woodard v. Lehman,* the Justice Department has failed to raise one important exhaustion issue. The civil complaint alleges one discriminatory practice that does not appear in the administrative complaint:

> defendants have failed to determine, in accordance with professional standards, the knowledge, skills and abilities that are critical to the successful performance of job to which class members could have been promoted. As a result, blacks have been denied or were unable to compete

for positions for which they were qualified in fact.

Complaint at 6. The first reference to possible misgrading of positions was in the June 21, 1985 submission by Mayfield's attorneys to the Attorney-Examiner, wherein they alleged "new jobs are purposefully ranked at grade levels that are more than two levels above the grade levels of many black employees, making blacks ineligible for these positions." Class Agent's Response to Letter from Attorney Examiner at 13. The question arises whether Mayfield exhausted his remedies as to this claim.

■ Under the exhaustion requirement, plaintiff can raise in this court only the claims that were raised in the administrative complaint or which reasonably could have been expected to grow out of the administrative charge. *Jenkins v. Blue Cross,* 538 F.2d 164, 167 (7th Cir.1976), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Danner v. Phillips Petroleum,* 447 F.2d 159, 162 (5th Cir. 1971); Schlei & Grossman, Employment Discrimination Law at 1212 (2d ed.). The D.C. Circuit has said that the purposes of the administrative complaint is to afford to the agency, a "reasonable opportunity to investigate violations assertedly committed by the putative defendant." *Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711, 728 (D.C.Cir.1978). The Circuit has also said that administrative complaints are to be construed liberally. *Id.* at 727.

■ Even when the administrative complaint is liberally construed, the allegations of misgrading of new jobs are barred for failure to exhaust. Mayfield's administrative complaint dealt with policies regarding the initial assignment of blacks to various positions and treatment of blacks within the promotion system. While the grading of new positions affects promotion insofar as current employees can seek promotions by applying for new positions, this tangential relationship does not seem a sufficient basis on which to ground a broadside at-

1. We are not presented, and do not reach, the question of whether the agency decision that cooperation was inadequate will be entitled to similar deference.

tack on the system for grading new jobs. A reasonably diligent EEO counselor, or even attorney-examiner, would not necessarily consider the grading of new jobs as a part of the complaint of discriminatory promotion practices. As one factor, the type of proof required to sustain allegations of misgrading is wholly different from the type of proof required to show discrimination in the promotion process. Thus, an attack on the process of grading new positions will be barred. The other allegations in the judicial complaint are reasonably related or identical to claims in the administrative complaint. As to those claims, plaintiff has exhausted his administrative remedies.

## II. *Timeliness of Mayfield's Title VII Claims*

The Justice Department next argues that Mayfield's claims of "continuing discrimination" are untimely because he has not alleged a discriminatory act occurring within the charge filing period. The Department concedes that the existence of a discriminatory system into the charge-filing period satisfies the statute of limitations. Def's Memo. in Reply at 16–17.[2] The government argues, however, that the more lenient "discriminatory system" timeliness requirements apply only when the plaintiff has pointed to a specific "facially neutral" policy existing into the charge filing period, or to a totally subjective promotional system, but not to a "pattern and practice" disparate treatment claim. *Id.* The Department asserts that under this rationale, Mayfield's claims are barred because he asserts only a "pattern and practice" claim.

■ The limitations that the government seeks to place on the "discriminatory system" arm of the timeliness requirement are

not justified by the logic of the "discriminatory system" rule. Under the "discriminatory system" arm, no discrete act of discrimination, *i.e.*, a hiring, a firing, a refusal to promote, within the charge-filing period is required. This is because the courts have viewed each day during which the discriminatory system exists as a separate violation of Title VII. *See Domingo v. New England Fish Co.*, 727 F.2d 1429, 1443 (9th Cir.1984); *Reed v. Lockheed*, 613 F.2d 757, 760 (9th Cir.1980). The continuing existence of the discriminatory system establishes the present violation of Title VII required by *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Because it is the existence of a present discriminatory system that satisfies the timeliness requirement, the determining factor is whether the challenged system violates Title VII. The flaws in the Justice Department's asserted limitations on "discriminatory system" analysis are apparent. It does not matter whether the discriminatory system was deliberately maintained, as in a disparate treatment case, or unintentionally maintained, as in the disparate impact case. It seems virtually uncontestable that there is no reason to differentiate, for the purposes of timeliness, between an explicit, "facially neutral" system and an explicit, facially discriminatory system as long as both violate Title VII.[3]

■ The distinction proposed by the government is, of course, more subtle. Justice would distinguish between the disparate impact claim founded on a "facially neutral" system or policy and the "pattern and practice" form of a disparate treatment claim. When considered in the light of our observation about the explicit, facially discriminatory system, Justice's argu-

2. It is well-established in this Circuit that in order to establish a "continuing violation," the plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [charge filing] period." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982), *quoting* B. Schlei & P. Grossman, Employment Discrimination Law at 232 (1st Ed. Supp.1979).

3. The explicitly discriminatory system, in fact, offers an easier Title VII case than the "facially neutral" system. This Circuit has also eschewed a rigid categorization of cases into "disparate treatment" and "disparate impact" cases. *See Segar v. Smith*, 738 F.2d 1249 (D.C.Cir.1984), *cert. denied, sub. nom. Meese v. Segar*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

ment assumes that there is some purposeful distinction that can be drawn between the explicit case of systemic disparate treatment and the case in which the discriminatory animus is shown indirectly. If the plaintiff can show, as he must in a disparate treatment case, that the employer deliberately discriminated against the target group, it should not matter whether proof of the intentional discrimination occurred by direct employer admission or by inference from a compelling history of adverse treatment. The defendant who intentionally discriminates but whose conduct is not explicit should face the same legal burdens as his more outspoken colleague who declares "no blacks allowed." [4]

The logic of the "discriminatory system" arm of the timeliness requirement in continuing discrimination cases should not, however, be allowed to swallow the whole rule. This "discriminatory system" arm should be confined to cases that are truly systemic, without expanding to include cases where a policy of limited applicability is alleged. *See Shehadeh*, 595 F.2d at 725 n. 73. This reading would reconcile the language of the timeliness requirement as enunciated in *Valentino*, 674 F.2d at 65, with the results reached in *Reed v. Lockheed*, 613 F.2d at 760 (plaintiff alleging systemic discrimination need not show an adverse act within the charge-filing period), *Shehadeh*, 595 F.2d at 725–26 (the plaintiff, who was not alleging discrimination of systemic proportions, filed a timely claim when one of the alleged discriminatory acts occurred during the charge-filing period), and *Milton v. Weinberger*, 645 F.2d 1070, 1076 (D.C.Cir.1981) (where plaintiffs' brought suit on unrelated instances of discrimination, suit is timely only for the discrete

discriminatory acts occurring within the charge-filing period). Having laid out these limitations rules, it is clear that because Mayfield has not alleged a specific act occurring during the charge-filing period, he may only sue if he alleges a discriminatory system existing into the charge-filing period.

■ One allegation of Mayfield's complaint clearly runs afoul of *Evans* and the requirement of a present violation as to Mayfield. Mayfield alleges that when blacks are first hired by the Tax Division, blacks are disproportionately assigned to lower graded positions with little or no promotion potential. Even assuming, *arguendo*, that Mayfield was discriminatorily assigned pursuant to discriminatory policy, and that the same discriminatory policy still exists, Mayfield fails to state a timely claim for discriminatory assignment. His allegedly discriminatory assignment occurred in 1957. Unlike a discriminatory promotions policy, which each day it continues to exist limits a claimant's ability to be promoted, a discriminatory initial placement or hiring is a single act incapable of repetition. In essence, Mayfield is in no different a position than the flight attendant in *United Air Lines v. Evans*. Mayfield has not suffered a present violation of Title VII because of the alleged discriminatory assignment policy, even if he is still suffering the effects of that alleged discriminatory assignment.

With the exception of Mayfield's allegations of discriminatory misgrading of new positions,[5] the remaining discriminatory practices in the complaint deal with the promotion system.[6] Taken together, these allegations present nothing less than a broadside attack on the validity of the Jus-

---

4. As to the Justice Department's proposed exception for "totally subjective" promotional systems, this is an attempt to distinguish *Reed v. Lockheed*, 613 F.2d at 757, and to confine *Reed* to its facts. The Department advances no argument for why a "totally subjective" system should be treated any differently than any other discriminatory system.

5. Because the allegations of discriminatory misgrading are dismissed for failure to exhaust, we do not deal with these allegations here.

6. Specifically, Mayfield alleges that the procedures used by defendants to make promotions or selections did not measure the candidate's possession of the skills needed in the position, that the promotions decisions are made by white supervisors with a heavy reliance on subjective evaluations which allows racial bias to enter the process, and that white supervisors manipulate the promotion system by "detailing" favored employees to jobs with disproportionate benefit to white employees.

tice Department's Merit Promotion Guidelines, and the Merit Promotion Plan for the Offices, Boards and Divisions, OBD 1335.-1a (dated July, 1972 and revised as OBD 1335.1, effective October, 1984). Mayfield challenges the validity of the promotion system, especially the subjective components of the promotion procedures. In addition, he challenges the practice of "detailing" as it interfaces with the operation of the promotion system. Notably, the discrimination alleged, if it exists, would be a form endemic to the structure of the current system, not just limited to specific, isolated incidents of abuse. As such, Mayfield's allegations are systemic in nature. Assuming he can show that the promotional system does, in fact, presently violate Title VII, Mayfield's allegations are timely.

### III. The Substance of Mayfield's Title VII Claims

As its next line of defense, the Justice Department argues that Mayfield has not alleged a set of facts that, if proven, would make out a claim under Title VII. The government raises two objections: (1) Mayfield cannot articulate facts from which the trier of fact could infer the existence of a system in violation of Title VII; and (2) Mayfield cannot demonstrate that he has suffered an injury caused by the existence of a discriminatory system. We address these objections seriatim.

### A. Does Mayfield plead a violation of Title VII?

The government's argument that Mayfield cannot articulate facts from which the court could infer the existence of a discriminatory system flows from its view that Mayfield has neither identified any specific facially neutral policy, thus failing to establish a prima facie disparate impact case, nor alleged a specific instance of discrimination nor any other evidence to supplement statistics in the proof of a pattern or practice claim, which the government alleges is necessary to support the disparate treatment case. In both of these argu-

ments, the government wholly fails to address the D.C. Circuit's decision in *Segar v. Smith*, 738 F.2d at 1249, which rejects the government's contention as to the value of statistical proof, as well as undermines Justice's contentions as to disparate impact pleading.

*Segar v. Smith* was a class action brought on behalf of black Drug Enforcement Agency agents against the DEA challenging DEA policies and practices in salary, promotions, initial grade assignments, work assignments, supervisory evaluations, and imposition of discipline. *Id.* at 1258. Notably, in that case which presented widespread systemic challenges similar to those here, the Circuit Court did not draw any rigid distinctions between disparate treatment and disparate impact claims. In fact, the court approved treating a systemic claim first as a disparate treatment claim, then as a disparate impact claim if the employer in rebutting the plaintiff's disparate treatment prima facie case asserts an employment practice or set of practices to explain an observed disparity. *Id.* at 1270. Although this order of proof places on the employer the burden of proving the business necessity of the practices regardless of whether plaintiff alleged a disparate treatment or a disparate impact claim, the Court of Appeals specifically rejected this additional burden as a ground for not moving to disparate impact analysis in the pattern and practice disparate treatment case. *Id.* at 1271.

The thrust of *Segar* is that plaintiff raises disparate impact as a possible basis for a Title VII action everytime he alleges a "pattern and practice" disparate treatment action. Under *Segar*, disparate impact can be reached through the "front door", by establishing a prima facie case of disparate impact, or by the "back door", by establishing a prima facie "pattern and practice" case of disparate treatment to which the defendant must respond by putting forward specific employment practices accounting for a disparity.[7] Once the specific

---

7. In addition, *Segar* also seems to reject the idea, set forth in *Pouncy v. Prudential Ins. Co.,*

668 F.2d 795, 800 (5th Cir.1980) and in Richey, Manual on Employment Discrimination and

practices are before the court, a disparate impact analysis would be warranted. Thus, after *Segar* the plaintiff may, in fact, have a claim for disparate impact, even if initially he cannot plead a specific "facially neutral" practice. Under these circumstances, dismissal of disparate impact based claims would be improper.

Turning to the government's argument that statistics alone are not sufficient to sustain a "pattern and practice" claim, the government ignores the specific language of the *Segar* opinion. In rejecting this same contention, the court stated, "Though anecdotal evidence might bolster a plaintiff's case or reduce the need for strong statistical proof, ... neither the presence nor the absence of specific anecdotal accounts alters the standard that a plaintiff's initial case must meet." The court, clearly contemplating that statistical proof alone would be sufficient to establish a prima facie case, further stated, "If plaintiffs' statistical proof *standing alone* permits an inference that DEA's employment decisions were more likely than not based on race, then this proof suffices irrespective of the presence of supporting anecdotal evidence." *Id.* at 1279 (emphasis added).

■ Thus, *Segar* dispenses with both the government's argument that plaintiff can not assert a disparate impact claim, and the government's claim that statistics alone are not sufficient to sustain a prima facie case of disparate treatment. Mayfield survives the 12(b)(6) challenge to his ability to prove a promotional system in violation of Title VII.[8]

#### B. *Has Mayfield Satisfied the Causation requirements?*

In addition to alleging a violation of Title VII, plaintiff must also allege facts showing causation. This requirement presents Mayfield with his highest hurdle. Because Mayfield did not actually apply for any jobs after his initial assignment, he must meet the causation requirements of *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters*, the Supreme Court announced that formal application for a job promotion is not an absolute prerequisite to a Title VII action. *Id.* at 366, 97 S.Ct. at 1870. If formal application would have been a futile gesture, then the potential applicant may recover on a Title VII claim. *Id.* In order to proceed under this theory of causation, the plaintiff must show that he would have applied for the job had it not been for the employer's discriminatory practices. *Id.* at 368, 97 S.Ct. at 1871. As the Supreme Court said in *Firefighters v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), "Each individual must prove that the discriminatory practice had an impact on him."

■ One argument raised by Justice to support dismissal can be disposed of at the start. The government contends that a futility claim is barred by the fact that blacks, including Mayfield, received promotions. Def's Memo. in Reply at 24. Logic does not, however, compel this conclusion. The fact that blacks received promotions clearly undermines plaintiff's claim of futility; it could be simultaneously true, however, that although some blacks are promoted, application for a promotion is a futile gesture for blacks in general.

■ The Department also argues that because Mayfield's refusal of a promotion to a GS–5 position bars his ability to sue for discriminatory failure to promote. Mayfield asserts that he rejected the GS–5 position because the position lacked promotion potential. The fact that Mayfield was offered a position at a higher grade

Civil Rights Actions in the Federal Courts at A–11, that disparate impact cannot attack the cumulative impact of several employment practices. In describing the need for a "job relatedness" showing by an employer after he had asserted policies as a defense to disparate treatment, the Circuit said, "Nor will the employer be forced to justify all of its employment practices. The employer will be required to show the job relatedness of only the practice *or prac-*

*tices* identified as the cause of the disparity." *Id.* at 1271 (emphasis added).

8. In this case in which little discovery has taken place, and in which neither party has filed statements of undisputed and disputed material facts, we decline the invitation to adjudicate this matter now as a motion for summary judgment.

undercuts his claims of futility. Again, however, the mere offer of a position does not logically preclude his claim that applications for promotion were futile.

Whether allegedly prevalent race prejudice rendered Mayfield's potential applications for promotion futile is a question of fact which cannot be resolved merely by resort to the pleadings. As such, it is inappropriate for resolution on a motion to dismiss. Moreover, even if we convert this to a motion for summary judgment, the evidence at this point is inconclusive. Thus, summary judgment is also inappropriate at this time.

At this point, Mayfield, as an individual claimant, has passed the necessary hurdles. He has exhausted his administrative remedies, filed a timely action, and brought claims potentially cognizable under Title VII. We can now turn to the claims raised by the other named plaintiffs.

## IV. Vicarious Exhaustion of Remedies

The next issue is whether plaintiffs Moore and Sykes, neither of whom filed administrative complaints, can join as plaintiffs on the grounds that they vicariously exhausted their administrative remedies through Mayfield's resort to administrative proceedings. The D.C. Circuit has endorsed the principle of vicarious exhaustion. *Foster v. Gueory*, 655 F.2d 1319, 1322–23 (D.C.Cir.1981). There are two requirements: (1) one of the plaintiffs must have actually exhausted his administrative remedies; (2) the claims of the parties seeking to take advantage of vicarious exhaustion must be so similar to the claims of the party who actually exhausted his remedies that no conciliatory purpose would be served by requiring the additional parties to file administrative charges. *Id.* at 1323.

The most recent, and most closely analogous, case from the D.C. Circuit is *Cook v. Boorstin*, 763 F.2d 1462 (D.C.Cir.1985). In *Cook*, the Black Employees of the Library of Congress (BELC) brought a class action against the Library alleging racially and sexually discriminatory employment practices, including the use in promotion decisions of "unvalidated tests which disqualify a disproportionate number of minority and female employees" and the use in promotion decisions of "unchecked, unvalidated subjective recommendations of supervisory personnel." *Id.* at 1464. After a six year administrative investigation, the Library concluded that there was no systemic discrimination. *Id.* BELC then filed suit in this court. Judge Johnson granted a motion to intervene by 6 individuals and denied a motion for class certification. *Id.* Then, an additional 31 individuals sought to intervene. Judge Johnson denied the motion to the 31 putative intervenors. *Id.* at 1465. She simultaneously certified 6 subclasses, into which the 31 putative intervenors did not fit. Subsequently, 5 of the subclasses were decertified. *Id.*

Appeal was taken by the 31 prospective intervenors shortly after their motion to intervene was denied. The prospective intervenors argued to the D.C. Circuit that, under *Foster v. Gueory*, they had vicariously exhausted their administrative remedies, that they were entitled to intervention as of right, and that permissive intervention was also proper. The Circuit agreed that the 31 individuals had vicariously exhausted their administrative remedies and that intervention as of right was proper. As a consequence, the Circuit reversed the trial court.[9] *Id.* In reaching its conclusion on vicarious exhaustion, the Court of Appeals applied the standard, enunciated in *Foster*, of whether "the two complaints differ to the extent that there is a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts." *Cook*, 763 F.2d at 1466. The Circuit found that where the plaintiffs and the would-be intervenors planned on proving a pervasive "pattern and practice" of racial discrimination in promotion and advancement of administrative employees throughout the Library, and where the allegations of systemic discrimi-

---

**9.** The Circuit Court also suggested that the District Court reexamine the question of class certi- fication.

nation were explicitly rejected by the final decision in the administrative class action, no substantial possibility existed that any individual claims would be administratively settled. *Id.* Thus, the Circuit concluded that application of the vicarious exhaustion doctrine was appropriate.

The government forcefully argues that Moore and Sykes are not similarly situated to Mayfield, so that vicarious exhaustion cannot apply. The government contends that because Moore and Sykes were in higher graded positions in the legal sections of the Division, while Mayfield was in the Administrative section, because Moore and Sykes were subject to different supervisory chains than Mayfield, and because Moore and Sykes applied for other positions, which Mayfield did not do, the agency might have accepted and investigated a class complaint brought by Moore and Sykes, even though it did not accept one by Mayfield. Furthermore, Justice points out that *Cook* can be distinguished from this case because the administrative finding of no systemic discrimination in *Cook* had been preceded by a 6–year investigation.

 We agree that *Cook* is not squarely on point. The question remains, however, whether a real possibility existed that the claims of Moore and Sykes might have been administratively resolved. Although the government gave Mayfield's allegations of systemic discrimination short shrift, we cannot conclude from Mayfield's case that no real possibility of administrative resolution of the claims of Moore and Sykes existed. Moore and Sykes, for example, both applied for promotions, some of which were denied while others were granted. On the issue of causation alone, this places them in a substantially different position than Mayfield, since Moore and Sykes would not have to prove that application from promotion was futile in order to recover under Title VII. This difference is significant enough to require Moore and Sykes first to seek administrative resolu-

tion of their claims independent from Mayfield's administrative actions.

Thus, Moore and Sykes should be dismissed as named plaintiffs on the complaint for failure to exhaust their administrative remedies. We note that this dismissal should in no way affect Moore's and Sykes' right to participate in class proceedings, if any, that may result from Mayfield's complaint. All that has been decided today is that Moore and Sykes cannot sue in their own right as parties representative of class interests.[10]

### Conclusion

Thus, defendant's motion to dismiss will be granted in part and denied in part. As to plaintiff Mayfield, the motion to dismiss is denied. As to plaintiffs Moore and Sykes, the motion to dismiss is granted. An order has been entered this day.

---

**10.** Because the claims of Moore and Sykes are dismissed for failure to exhaust their administrative remedies, there is no need to proceed to

an analysis of the substantive merits of their Title VII claims.