752 F.2d 477
 36 Fair Empl.Prac.Cas. 1781,
38 Fair Empl.Prac.Cas. 1863,
36 Empl. Prac. Dec. P 34,979
Joan A. HAGANS, Plaintiff-Appellant,
v.
William CLARK, Secretary of the Department of Interior,
Defendant-Appellee.
 No. 84-3675.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1984.
Decided Feb. 1, 1985.
As Amended May 3, 1985.
 
 Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, Alaska, for plaintiff-appellant.
 Sue Ellen Tatter, Asst. U.S. Atty., Anchorage, Alaska, for defendant-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before WRIGHT, SNEED, and ALARCON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This is an appeal from the district court's final judgment dismissing the plaintiff's Title VII employment discrimination suit pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 This is the third time this case has been before us. The litigation began on July 12, 1978, when the plaintiff, Joan Hagans, brought suit claiming a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. (1982). Her complaint alleged that the Secretary of the Interior, by his agents and employees (the government), unlawfully discriminated against her on the basis of sex by hiring a male for a position for which she claims to have been more qualified.
 
 
 3
 The district court heard the plaintiff's evidence and at its conclusion granted the government's motion of dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 4
 The evidence presented established that the plaintiff began her government service in 1955 in a GS-4 position with the Bureau of Land Management. By 1974, she had risen to the GS-13 position of Chief of Operations of the Alaska Outer Continental Shelf (OCS) Office. Edward Hoffmann, the manager of the Alaska OCS Office, selected the plaintiff for the OCS job. Hoffman was the immediate supervisor of both the plaintiff and Donald Henninger, the chief of the Environmental Assessment Division. The plaintiff and Henninger alternated as acting manager whenever Hoffmann was absent.
 
 
 5
 In 1977, a new GS-14 level position of assistant manager was created for the OCS Office, and the plaintiff applied for the position. From a list of eleven candidates submitted to Hoffmann by a promotion panel in Washington, D.C., he was to select the top three candidates. Although the plaintiff was one of the three finalists, Hoffmann made Robert Brock his first choice. In December of 1977, the Washington office followed Hoffmann's recommendation and selected Brock for the job.
 
 
 6
 In the initial proceedings below, the plaintiff offered testimony from Hoffmann's deposition taken in 1978 discussing documents which Hoffmann claimed were his original notes explaining the criteria he used to assess the top three candidates and his reasons for selecting Brock. At that time Hoffmann testified that he had not altered the notes. The plaintiff, however, introduced a copy of the notes, identical to the claimed "original," except that the copy was undated and contained a reference to Hoffmann's planned retirement and the need for effective continuity. The plaintiff had obtained her copy of the notes by taking and reproducing, without permission, documents from a folder on Hoffmann's desk. The alteration deleted the reference to the desire for an "heir apparent" from which it arguably could be inferred that Hoffmann wanted a white male for the job.
 
 
 7
 The plaintiff also presented evidence of several conflicts between Henninger and her, some of which occurred because of Henninger's apparent hostility toward women in the workplace and, more specifically, his hostility toward women in supervisory positions. Although Hoffmann and the plaintiff enjoyed a good, close working relationship, Hoffmann, in his 1978 deposition, testified that he thought that a woman supervisor would cause Henninger a great deal of stress.
 
 
 8
 During the plaintiff's attempt to make out a prima facie case, however, there was considerable evidence introduced to show that Brock was chosen for nondiscriminatory reasons, including his multiple-resource management experience, his degree in forestry, and his experience in Washington, D.C. In addition, Hoffmann's 1978 deposition testimony included legitimate reasons for not selecting the plaintiff, including her narrow, provincial outlook, her problems communicating in group situations, and her difficulty in being a team member. The plaintiff, however, introduced testimony that she was a good communicator and an excellent team player.
 
 
 9
 As already indicated, at the conclusion of the plaintiff's case in the initial proceeding before the district court, the district court granted the government's Rule 41(b) motion, finding that she had failed to establish a prima facie case of discrimination. On appeal, we held that the lower court had applied an improper legal standard, and reversed and remanded. See Hagans v. Andrus, 651 F.2d 622 (9th Cir.) (Hagans I ), cert. denied, 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). A fairly complete statement of the facts appears in Hagans I.
 
 
 10
 On remand, without reviewing additional evidence or making new findings of fact, the district court again entered a judgment of dismissal. The plaintiff appealed for the second time, and this court, 705 F.2d 467, in an order dated March 21, 1983 (Hagans II ), again remanded the case to the district court, stating only:
 
 
 11
 This cause is remanded to the district court for trial on the remaining issues under Lynn v. Regents of the University of California, 656 F.2d 1337 (1981), unless the court establishes by specific written findings of fact that plaintiff did not make a prima facie case under the four elements set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 [93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)]; Lynn v. Regents of the University of California, 656 F.2d at 1341.
 
 
 12
 On the second remand, the plaintiff filed two motions requesting that the case be set for trial. The government then deposed Hoffmann for the second time, and the plaintiff's attorney confronted him, for the first time, with the original and altered sets of notes. Again without a trial, the district court, on September 19, 1983, issued a memorandum and an order, including sixty-two findings of fact, as well as several conclusions of law. The district court found that the plaintiff failed to make out a prima facie case because she had not offered sufficient evidence of discriminatory intent to make it likely that sex was the reason for her lack of promotion. As an alternate ground, the district court held that, even assuming a prima facie case had been made out, the plaintiff had not carried her ultimate burden of persuasion.
 
 
 13
 On appeal, the plaintiff argues that the district court erred once again in its formulation of the legal standard to be employed in determining whether a prima facie case has been established. She also argues that the district court's finding, that in any event she had not carried her ultimate burden of persuasion, was made without permitting her to demonstrate that the allegedly nondiscriminatory reason for failing to appoint her was pretextual. Finally, the plaintiff argues that the district court erred in refusing to determine whether Hoffman perjured himself in his first deposition and in refusing to draw an inference of discrimination from the alteration of Hoffmann's notes.
 
 
 14
 We shall address each of these contentions.
 
 II.
 DISCUSSION
 
 15
 A. The Proper Legal Standard for a Prima Facie Case
 
 
 16
 The decision to apply a particular legal standard, and to interpret case law to require a particular prima facie showing, is a legal judgment freely reviewable on appeal. Fleury v. Harper & Row, Publishers, Inc., 698 F.2d 1022, 1026 (9th Cir.1983); Miller v. United States, 587 F.2d 991, 994 (9th Cir.1978). Thus, whether the district court applied the correct legal standard is subject to de novo review.
 
 
 17
 Title VII cases consider whether an employer treated certain employees "less favorably than others because of their race, color, religion, sex, or national origin." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The disparate treatment model is used where the plaintiff claims that an employer is intentionally discriminating against an employee. Under this model, the plaintiff must show, through direct or circumstantial evidence, the employer's intent to discriminate. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).
 
 
 18
 In the leading case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and the order of presentation of proof in a Title VII case alleging disparate treatment. First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. Third, if the defendant is successful, the plaintiff must have a full and fair opportunity to prove by a preponderance of the evidence that the proffered reasons are a pretext for discrimination. This burden merges with the plaintiff's ultimate burden of persuading the court that she has been the victim of intentional discrimination. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).
 
 
 19
 A prima facie case of intentional discrimination, identifying the discriminatory criterion "as the likely reason for the denial of a job opportunity," White v. City of San Diego, 605 F.2d 455, 458 (9th Cir.1979), must be established by a preponderance of the evidence. Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093. A properly established prima facie case allows an inference of illegal discrimination, creating a legally mandatory, rebuttable presumption against the employer. Id. at 254 n. 7, 101 S.Ct. at 1094 n. 7; Casillas v. United States Navy, 735 F.2d 338, 343 (9th Cir.1984).
 
 
 20
 McDonnell Douglas set forth the specific elements of a prima facie case of disparate treatment. Under its oft repeated test, the plaintiff must show: (1) that she belongs to a protected group; (2) that she applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. It has repeatedly been emphasized that this four part test is neither exclusive nor rigid; its satisfaction depends on the facts of each case. See Furnco, 438 U.S. at 575-76, 98 S.Ct. at 2948-49; Spaulding v. University of Washington, 740 F.2d 686, 700 (9th Cir.1984); Hagans I, 651 F.2d at 625; White, 605 F.2d at 458.
 
 
 21
 Up to this point nothing has been said with which plaintiff Hagans or the defendant Secretary would disagree. The source of their disagreement is found when Hagans I is compared with Hagans II. It comes about because Hagans II referred to Lynn v. Regents of the University of California, 656 F.2d 1337 (9th Cir.1981). The plaintiff argues that this altered the law of this case, as set forth in Hagans I, with respect to the legal standard to be employed in determining whether a prima facie case has been established. Specifically, the plaintiff insists that Hagans II established that the fourth element of the McDonnell Douglas test is met merely by showing that a similarly qualified male was hired instead of her.[1]
 
 
 22
 This misreads Hagans II. There we remanded for trial "unless the court establishes by specific written findings of fact that plaintiff did not make a prima facie case under the four elements" embodied in McDonnell Douglas. We did not alter the manner in which a prima facie case could be established as required by Hagans I. The reference to Lynn was to support the requirement that the McDonnell Douglas four elements must be discussed and applied to the facts before a finding of no prima facie case can be made. See Lynn v. Regents of the University of California, 656 F.2d at 1341-42.
 
 
 23
 However, in Hagans I we stated that the traditional McDonnell Douglas four elements were not completely applicable to this case because the fourth prong of that test would require modification. Rather than adopting a "specific fourth prong" that would fit precisely the facts of this failure to promote case, we required that, whatever reformulation of McDonnell Douglas was used, the district court must, in the end, "determine whether the evidence is sufficient to create an inference that sex was 'the likely reason for the denial of [the] job opportunity.' " 651 F.2d at 626 (quoting White, 605 F.2d at 458). If the evidence is not sufficient the case must be dismissed; if it is, the case must go forward. The issue before us thus becomes whether on remand following Hagans II the district court properly determined that the evidence was insufficient to create an inference that sex was the likely reason for the failure to promote.
 
 
 24
 B. The Application of the Legal Standard to the Facts
 
 
 25
 Some uncertainty exists as to the proper standard to be used in reviewing the district court's finding regarding establishment of a prima facie case. See generally Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480-81 (9th Cir.1983); Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 539-46 (9th Cir.1982). We need not decide whether the de novo or clearly erroneous standard is proper because we conclude that under either standard the district court correctly determined that the plaintiff failed to establish a prima facie case.
 
 
 26
 The district court's findings with respect to the plaintiff's prima facie case are comprehensive. E.R. 30-38. At the threshold the plaintiff argues that the district court improperly relied on subjective job criteria in its determination that she failed to carry her prima facie burden. Cf. Lynn, 656 F.2d at 1344. This contention has little merit. First, the district court found that the plaintiff and Brock were equally qualified for the position. Second, the district court recognized that to consider evidence of subjective nondiscriminatory reasons for the employment decision in the prima facie determination was improper. This is documented by the fact that the use of these criteria was confined to its alternative ground for the decision, i.e., that the plaintiff had not carried her ultimate burden of persuasion.
 
 
 27
 The findings of the district court that support its conclusion that sex was not the likely reason for the denial of the promotion are numerous. For example, plaintiff's prior advancement in government service, Hoffmann's reliance on her advice and counsel in the past, Hoffmann's recognition for his support of the objectives of the EEO program in his office, the appointment of a woman to a substantially equivalent position in another part of the country, Hoffmann's efforts to alter Henninger's attitude toward the plaintiff, and the district court's finding that Hoffmann's credibility remained strong, all support the finding.
 
 
 28
 In her effort to establish a prima facie case, the plaintiff relies fundamentally on the fact that a man received the promotion plus two basic configurations of evidence. The first of these is expressed in the district court's findings indicating that Hoffmann was aware that it would have been stressful for Henninger to have a woman supervisor. E.R. 36-37. The second was Hoffmann's alteration of his notes. The only significant change made by Hoffmann was to delete the factor relating to the need for effective continuity. However, Hoffmann deleted this reference after a meeting with an EEOC official, more than six months after the decision to hire Brock had been made. Were we required to look only at those circumstances on which the plaintiff relies, we would be required to hold that the fourth element of the McDonnell Douglas test was satisfied. Hagans I does not permit us to so limit our vision. The district court was correct in examining other configurations of objective evidence in ascertaining whether the evidence was "sufficient to create an inference that sex was the likely reason for the denial of the job opportunity." 651 F.2d at 626. We agree that on the basis of the evidence properly considered at this stage of the litigation the plaintiff failed to establish a prima facie case of sex discrimination in employment. This conclusion makes it inappropriate to consider the district court's alternative holding that, even if a prima facie case were made out, the plaintiff had failed to carry her ultimate burden of persuasion. We express no opinion with respect to it.
 
 C. Other Arguments
 
 29
 The plaintiff's other assertions of error may be disposed of more quickly. She contends that it was error for the trial court to refuse to find that Hoffmann perjured himself when he denied altering his notes. This is error, the plaintiff argues, because she believes that the trial court's finding that Hoffmann altered the notes necessarily required a conclusion that she established a prima facie case of intentional discrimination. Her disagreement with these findings is simply a reiteration of her argument that she met her prima facie burden.
 
 
 30
 The plaintiff also argues that the trial court should have considered Hoffmann's second deposition, taken after the second appeal. In Hagans I, this court left it to the trial court's discretion to review the evidence as it stood, or to receive additional evidence. The trial court's refusal to consider the second deposition is not an abuse of discretion.
 
 
 31
 We affirm the decision of the district court.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 In support of this position, the plaintiff cites dicta from several cases of this court. See, e.g., Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 543-44, n. 11 (9th Cir.1982) ("[p]roof of the four McDonnell Douglas elements is prima facie ... proof of discriminatory intent ..."); O'Brien v. Sky Chefs, Inc., 670 F.2d 864, 868 n. 1 (9th Cir.1982) (proof of the four elements is sufficient to create an inference of discriminatory intent); Chavez v. Tempe Union High School Dist. No. 213, 565 F.2d 1087, 1091 (9th Cir.1977) ("[a] showing of the four factors identified in McDonnell Douglas raises an inference of discriminatory motive ...")
 The plaintiff also relies on this court's opinion in Lynn, 656 F.2d at 1337, to support her contention that a showing that a similarly qualified male was hired necessarily creates an inference of intentional discrimination. We disagree. In Lynn, although we restated that the fourth part of McDonnell Douglas requires a showing that similarly qualified males achieved the sought-after position, we nevertheless required the plaintiff to offer evidence establishing that it was "more likely than not" that the employment decision was based on sex. Furthermore, there the plaintiff offered statistical evidence of a general pattern of academic sex discrimination which "tend[ed] to establish that it [was] more likely than not that the [employer's] decision was based on [sex], and therefore tend[ed] to establish Lynn's Prima facie case." 656 F.2d at 1343. Although the 1983 order in this case cited Lynn, it does not therefore follow that the district court erred here by requiring the plaintiff to show more than that a male was hired instead of a female to establish a prima facie case. Just as the McDonnell Douglas test is not a rigid one, neither should Lynn be read to state a mechanical test. Here, the district court correctly required a showing of discriminatory animus.