Denise CORDOVA, Plaintiff–Appellant,

v.

STATE FARM INSURANCE COMPANIES; State Farm International Services, Inc.; State Farm Mutual Automobile Insurance Company; State Farm Life Insurance Company; State Farm Fire and Casualty Company, Defendants–Appellees.

No. 96–15867.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1997.

Decided Sept. 8, 1997.

Richard· Segerblom, Las Vegas, NV, for the plaintiff–appellant.

Carrie McCrea Hanlon, Thorndal, Backus, Armstrong & Balkenbush, Las Vegas, NV, for the defendants–appellees.

Before HUG, Jr., Chief Judge, GOODWIN and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge.

Denise Cordova ("Cordova"), a former claims representative for State Farm Insurance Company ("State Farm"), appeals the district court's summary judgment disposition of her Title VII action alleging she was denied a position as a State Farm trainee agent on account of her national origin and sex. We reverse.

## I. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Id.*

## II. FACTS AND PROCEDURAL HISTORY

Denise Cordova, a Mexican–American woman, was employed as a claims representative off and on by State Farm for five years. After five years, she applied to become a State Farm trainee agent, a position

in a two-year training program required to become a State Farm agent.[1]

Agency Manager John Raker ("Raker") was responsible for selecting the trainee agent. After accepting numerous applications, he narrowed the field to four individuals—Brian LaBuff ("LaBuff"), a Native American male; Terry Carmona ("Carmona"), a white female; Art Davis, an Asian male, and Cordova. That the final four candidates were minorities or women was "by design," because State Farm required Raker to recruit "either a protected class, meaning females, or a minority."

Raker first offered the job to LaBuff, who turned it down, and then to Carmona, who accepted. Neither had worked for State Farm or had any specific experience in insurance. Raker told Cordova that he had selected LaBuff for the position because he had real estate sales experience. He admits telling Cordova at that time that she was the number two candidate in the selection pool, but claims he only said it to make her feel better, having previously decided that she was the third most qualified candidate.

Subsequently, Cordova met with Vice President Gallagher to inquire why she was not hired. He informed her that State Farm had ultimately filled the position with a female who was a single mother and had worked her way through college.

Cordova then filed a Title VII[2] action against State Farm, claiming she was discriminated against on the basis of her sex and national origin. She contends that her insurance background should have made her the number one candidate. As support, she points to another agent who had no prior sales experience when he was hired and State Farm's policy since 1994 (after the hiring decision was made here) that "all State Farm agent trainees have to come from within State Farm."

Cordova also offers more direct evidence of discriminatory motive. She claims that during her first interview, Raker told her,

"We can't even look at a white male."[3] Furthermore, she points to a statement in an affidavit by Carmona, the woman who ultimately accepted the job, that after she was hired by Raker, she heard him refer to a Hispanic agent, George Maldonado, as a "dumb Mexican." Raker denies ever making such a statement. Carmona also recalls Raker stating that he had been required to hire Maldonado because he was a member of a minority class. Raker neither confirms nor denies this statement.

State Farm explains that it offered the job first to LaBuff because of his educational background (B.A. in Economics from Stanford) and his prior success in real estate sales, which demonstrated strong marketing skills. State Farm further asserts that Carmona, a·single mother who put herself through school, impressed Raker with her determination, intelligence and commitment, making her his second choice. Raker also indicated in his affidavit that Carmona had assured him she had sufficient financial resources to support herself during the start-up phase of running her own office, and that such support would come from her personal financial resources, her fiance, and her father.

According to Cordova, however, these reasons are pretextual. She reiterates that Raker's alleged derogatory comments about Mexicans and his dislike of the minority focus in hiring provide evidence of discriminatory motive. Moreover, she notes that Carmona denies ever being asked if her father would provide support; Carmona makes no statement as to whether she discussed with Raker her own financial resources or support from her fiance. Cordova also argues that 18 months after this hiring decision was made, State Farm adopted a policy to hire only State Farm employees as agent trainees, a standard Cordova alone, among these candidates, met.

The district court granted summary judgment for State Farm, concluding that Cor-

---

1. Agents are self-employed independent contractors who own, and develop equity in, their own businesses.

2. 42 U.S.C. § 2000e *et seq.*

3. This statement was allegedly made in a manner or tone that indicated to Cordova his dislike of the minority/women requirement.

dova failed to establish a prima facie case because she did not raise a rebuttable presumption of discrimination under the first prong of the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Furthermore, the district court held that the only evidence of discriminatory animus—Raker's alleged reference to Maldonado as a "dumb Mexican"—was not sufficient to raise an inference of unlawful discrimination.

## III. ANALYSIS

 A plaintiff in a Title VII case must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant provides such a reason, then in order to prevail, the plaintiff must demonstrate that this reason is pretextual. *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

### A. *The Prima Facie Case*

 To establish a prima facie case, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). One way to do this is through the *McDonnell Douglas* framework, under which Cordova must show that (1) she belongs to a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open and the employer continued to seek applications from persons with comparable qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. "The requisite degree of proof necessary to establish a *prima facie* case for Title VII ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis,* 26 F.3d at 889; *see also*

*Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir. 1991) ("[T]he amount [of evidence] that must be produced in order to create a *prima facie* case is 'very little.' "). "The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas* ..., or by more direct evidence of discriminatory intent." *Wallis,* 26 F.3d at 889 (citation omitted).

Cordova satisfied her initial burden of establishing a prima facie case. She belongs to a protected class; she was rejected for a position for which she was qualified; and the employer continued to seek applications from persons with comparable qualifications.[4] Accordingly, Cordova has produced the minimum evidence necessary to raise a *McDonnell Douglas* presumption of discrimination.

The district court's reliance on *Hagans v. Clark,* 752 F.2d 477, 481 (9th Cir.1985), to support its holding that Cordova failed to raise an inference of discrimination, is misplaced. We noted in *Lowe v. City of Monrovia,* 775 F.2d 998, 1006 n. 5 (9th Cir.1985), that *Hagans* should not be read to suggest that a plaintiff who satisfies the four-part *McDonnell Douglas* test nevertheless may fail to establish a prima facie case. We clarified that *Hagans'* use of the term "prima facie case" *did not refer* to "the rebuttable presumption that a plaintiff must establish, as the first step in a Title VII case," but rather to "the plaintiff's burden of putting on a case-in-chief that is sufficient to defeat a motion under Fed.R.Civ.P. 41(b) and thus to require the defendant to put on its case in opposition." *Id.* Therefore, *Hagans* is inapplicable here.

A plaintiff can also establish a prima facie case of disparate treatment without satisfying the *McDonnell Douglas* test, if she provides evidence suggesting that the "employment decision was based on a discriminatory criterion illegal under the [Civil Rights] Act." *International Brotherhood of Teamsters v.*

---

4. The parties do not dispute, and the district court noted, that Cordova possessed the minimum qualifications necessary for consideration for the trainee agent position. She received an "acceptable" score on the required personality examination, and she scored 99% on the required agent's take-home examination. At the time of her trainee agent application, she had over nine years of experience in the insurance industry (five years at State Farm) and two years of retail sales management experience.

*United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Cordova has offered direct evidence of such discriminatory animus: Raker's alleged comments that Maldonado was a "dumb Mexican" and that he was hired because he was a minority. Such derogatory comments can create an inference of discriminatory motive. *See, e.g., Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir.1995) (fire chief's derogatory comments about Hispanics create inference of discriminatory motive); *Lindahl v. Air France,* 930 F.2d 1434, 1439 (9th Cir.1991) (supervisor's remarks indicating sexual stereotyping create inference of discriminatory motive).

Nor do Raker's alleged comments fall within the ambit of stray remarks that have been held insufficient to establish discrimination. *Cf. Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993) (supervisor's comment that "[w]e don't necessarily like grey hair" was weak circumstantial evidence of discriminatory animus on the basis of age, was uttered in ambivalent manner, and was not tied directly to employee's termination); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990) (hiring executive's comment that he chose "a bright, intelligent, knowledgeable young man" over appellant was merely stray remark and insufficient by itself to establish age discrimination). Calling someone a "dumb Mexican" is an egregious and bigoted insult, one that constitutes strong evidence of discriminatory animus on the basis of national origin. Moreover, there is nothing ambivalent about Raker's alleged remarks here and they are not the only evidence Cordova offers to establish a prima facie case.

Finally, if such remarks were indeed made, they could be proof of discrimination against Cordova despite their reference to another agent and their utterance after the hiring decision.[5] Raker was the one who selected the trainee agent; if he has any animus toward Mexicans, it likely would have affected his trainee agent decision as well. *See, e.g., Warren,* 58 F.3d at 443 (general com-

ments about Hispanics create inference of discriminatory motive against particular complainant). In addition, the timing of his alleged remarks is not so far removed from the contested hiring decision so as to render them completely unrelated to that decision.

Cordova has established a prima facie case of discrimination by satisfying the four-part *McDonnell Douglas* test, and alternatively, by providing direct and circumstantial evidence of discriminatory intent. Therefore, the district court erred when it based its grant of summary judgment on her failure to establish a prima facie case.

**B.** *State Farm's Nondiscriminatory Reason for Rejecting Cordova and the Evidence of Pretext*

When we review a district court's order granting summary judgment, we must also examine the record to determine if there is any other basis for affirmance. *Lowe,* 775 F.2d at 1007. If the district court's result is correct, we will affirm even if the court relied on an erroneous ground. *Id.* Thus, we must now examine the portions of the record relating to the second and third steps of the order of proof in disparate treatment cases.

Because Cordova has established a prima facie case of employment discrimination, the burden shifts to State Farm to rebut the presumption of discrimination by articulating a nondiscriminatory reason for not hiring her. *See, e.g., Wallis,* 26 F.3d at 889. State Farm claims that it based its decision on the educational and personal characteristics of the two candidates who were offered the job. We assume, *arguendo,* that this reason is legitimate and nondiscriminatory.

State Farm's articulation of a legitimate, nondiscriminatory reason serves only to shift the burden back to Cordova to raise a genuine factual question as to whether the proffered reason is pretextual. *Lowe,* 775 F.2d at 1008. "She must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible. Still, because of

---

**5.** Similarly, that Carmona, not Cordova, recounts Raker's alleged comments does not alter our conclusion, and can even be viewed as lending credibility to Cordova's offer of proof. On the other hand, State Farm's argument that Car-

mona is hardly a neutral witness (she apparently has sued the company herself) goes to the weight of her testimony, a matter for the trier of fact to sort out.

the inherently factual nature of the inquiry, [she] need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Lindahl,* 930 F.2d at 1438 (citation omitted). "When a plaintiff has established a *prima facie* inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Sischo–Nownejad,* 934 F.2d at 1111. We have held:

> [I]n evaluating whether the defendant's articulated reason is pretextual, the trier of fact must ... consider the same evidence that the plaintiff introduced to establish her prima facie case. When that evidence, direct or circumstantial, consists of more than the [prima facie] presumption, a factual question will almost always exist with respect to any claim of nondiscriminatory reason.

*Id.* (internal citation omitted).

Cordova has set forth enough evidence of pretext to survive summary judgment. She has offered more than the prima facie presumption to show discrimination, including evidence of derogatory comments allegedly made by Raker about a Mexican agent and Raker's alleged dislike of the minority focus in hiring. In addition, she points to specific statements by Raker about Carmona's financial resources that are either not supported or contradicted by Carmona's affidavit. Viewing all the evidence, including Raker's alleged statements about Maldonado, in the light most favorable to Cordova and resolving all inferences in her favor, we conclude there is a genuine issue of material fact regarding whether State Farm unlawfully discriminated against Cordova in failing to select her for the trainee agent position.[6]

Accordingly, we REVERSE and REMAND to the district court to proceed to trial.

---

6. Cordova's failure to present any evidence of discrimination on the basis of sex, or on the basis of sex *and* national origin, does not preclude her from surviving summary judgment on her national origin claim.